IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-00498-MSK-KLM

MARK JORDAN,

    Plaintiff,

v.

R.WILEY, Warden, ADX Florence,
H. LAPPIN, Director, Bureau of Prisons, and
U.S. BUREAU OF PRISONS,

    Defendants.

_____

**OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING, IN PART, MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion for Partial Summary Judgment **(# 24)**, the Defendants' response **(# 34)**, and the Plaintiff's reply **(# 37)**; the Defendants' Motion to Dismiss **(# 27)**, the Plaintiff's response **(# 32)**, and the Defendants' reply **(# 36)**; and the Defendants' Motion to Strike **(# 39)** the Plaintiff's reply in support of his summary judgment motion, the Plaintiffs' response **(# 40)**, and the Defendants' reply **(# 41)**.

## FACTS

The following facts are those set forth in the *pro se* Complaint **(# 3)**; as discussed herein, many of the operative facts are disputed by the Defendants.

The Plaintiff is an inmate of the Federal Bureau of Prisons ("BOP"). In August 2005, the Plaintiff was housed in a BOP facility in Littleton, Colorado, awaiting sentencing on certain

1

criminal charges. On August 24, 2005, the Plaintiff was interviewed by a Probation Officer, tasked with preparing a Pre-Sentence Report ("PSR") for the Plaintiff's sentencing ("the 2005 PSR"), and was told that the PSR for his current sentencing would incorporate information from a prior PSR ("the 1994 PSR") prepared for an earlier sentencing of the Plaintiff on other charges. As a result, to "prepare for any objections to the PSR and related sentencing issues," the Plaintiff obtained copies of both the 1994 PSR and Probation Office's draft of the 2005 PSR in advance of his sentencing.

At that time, allegedly unbeknownst to the Plaintiff, his possession of PSRs was in violation of BOP Program Statement 1351.05. That Program Statement, which nominally deals with the circumstances under which the BOP would release information in order to comply with the Freedom of Information Act, was apparently revised in September 2002 "to prohibit inmates from obtaining and possessing photocopies of their [PSRs] and the State of Reasons (SOR) from their Judgment(s) in a Criminal Case." The Summary portion of the Program Statement goes on to explain that the decision to limit possession of PSRs "is to protect inmates from being coerced by other inmates to produce their PSRs and SORs for illicit purposes." The Program Statement makes clear that "Inmates will be permitted to review their PSRs and SORs, but cannot obtain or possess photocopies."[1]

---

[1]The pertinent substantive provisions of the Program Statement read as follows:

For safety and security reasons, inmates are prohibited from obtaining or possessing photocopies of their PSRs, SORs, or other equivalent non-U.S. Code sentencing documents. . . Inmates violating this provision are subject to disciplinary action.

. . . PSRs and SORs received by mail will be treated as contraband, and handled according to the Mail Management Manual.

On October 20, 2005, the Plaintiff was transferred to the BOP's facility in Florence, Colorado. Upon his arrival, his personal property – including the two PSRs – was inventoried. Although not specifically alleged in the Complaint, it appears that despite the BOP Program Statement, the Plaintiff was allowed to retain the PSRs. However, a week later, the staff at Florence conducted a shakedown of the Plaintiff's cell, seizing, among other things, the PSRs. The Plaintiff was charged with a disciplinary violation for possession of contraband, 28 C.F.R.

> This prohibition does not apply to inmates in Bureau of Prisons custody with a need to review their PSRs prior to sentencing. For example, a pretrial inmate scheduled for sentencing may possess and review the PSR in preparation for sentencing. After sentencing, however, the inmate is prohibited from retaining a copy of the PSR.
>
> The Bureau implemented this policy for the following reasons.
>
> • Many PSRs and SORs contain information regarding the inmates' government assistance, financial resources, community affiliations, etc.
>
> • The Bureau has documented an emerging problem where inmates pressure other inmates for a copy of their PSRs and SORs to learn if they are informants, gang members, have financial resources, etc.
>
> • Inmates who refuse to provide the documents are threatened, assaulted, and/or seek protective custody. Likewise, inmates providing PSRs and SORs containing harmful information are faced with the same risks of harm.
>
> . . .
>
> Although prohibited from obtaining or possessing photocopies, federal inmates are entitled under the [Freedom of Information Act] to access their own PSRs. . . Inmates must be provided reasonable opportunities to access and review their PSRs, SORs, or other equivalent non-U.S. Code sentencing documents. . . Inmates are responsible for requesting an opportunity to access and review these records with unit staff in accordance with the program Statement on Inmate Central File. . . .

*Docket* # 34, Ex. 2 at 16-17.

§541.13, resulting from his possession of the PSRs. On November 2, 2005, a disciplinary hearing panel rejected the Plaintiff's argument that he was unaware of a restriction on possession of PSRs, found him guilty of possessing contraband, and punished him with a restriction on his commissary privileges. The Plaintiff contends that he was not permitted to call witnesses or present evidence in his defense at the hearing..

In December 2005, Defendant Wiley, the Florence facility's Warden. recommended that the Plaintiff be placed in the highly-restrictive Control Unit, as a result of, among other things, his disciplinary record, including the contraband offense involving the PSRs. The Plaintiff was given a Control Unit Hearing pursuant to 28 U.S.C. §541.43, and in January 2006, the BOP concluded that the Plaintiff should be assigned to the Control Unit for a period of 65 months. The Plaintiff's conviction for possession of the PSRs was among the factors considered in making the Control Unit designation.

The Complaint alleges seven causes of action: (i) that the BOP's regulation prohibiting possession of contraband is unconstitutionally vague, as applied to the Plaintiff, in violation of the Fifth Amendment to the U.S. Constitution; (ii) that the BOP Program Statement governing inmate possession of PSRs is unconstitutionally vague, as applied to the Plaintiff, in violation of the Fifth Amendment; (iii) that both the Plaintiff's disciplinary conviction for possession of contraband, and his assignment to the Control Unit, deprived him of Procedural Due Process, in violation of the Fifth Amendment; (iv) that both the Plaintiff's disciplinary conviction for possession of contraband and assignment to the Control Unit were "arbitrary [and] capricious," thus violating his right to Substantive Due Process in violation of the Fifth Amendment; (v) that the BOP Program Statement and the disciplinary conviction of the Plaintiff "is contrary to law and short of

4

statutory rights," including Fed. R. Crim. P. 32 and various statutory provisions; (vi) that the BOP Program Statement was a rule promulgated without adequate notice and comment in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 553; and (vii) that the BOP's designation of PSRs as contraband occurred without publication for notice and comment in the Federal Register, in violation of 18 U.S.C. § 4012.

The Plaintiff moves for summary judgment **(# 24)** on his first and second claims – that the BOP's contraband regulation and its Program Statement are unconstitutionally vague. He argues that "Neither Program Statement 1351.05 or [28 C.F.R. § 541.13] provided [him] with a reasonable opportunity to understand that possessing his PSRs in order to prepare for pending sentencing proceedings was prohibited." As to the BOP regulation, he contends that its mere reference to prohibiting "anything not authorized" failed to give him adequate notice, particularly insofar as the PSRs were not confiscated upon his arrival at Florence. He appears to contend that, with regard to the Program Statement, his pending sentencing entitled him to avail himself of the exception permitting inmates "with a need to review their PSRs prior to sentencing" to possess them, and the Defendants' interpretation of that exception to reach a different result demonstrates vagueness. He further argues that the Program Statement conflicts with the BOP's regulations, in that 28 C.F.R. § 543.11(d) permits inmates to possess "legal materials," including PSRs, "which are necessary for the inmate's own legal actions." Finally, he argues that possession of the PSRs is authorized by 18 U.S.C. § 3552(d) and Fed. R. Civ. P. 32. He requests that the Court declare the regulation and Program Statement to be unconstitutional, and to direct the expungement of his disciplinary conviction and Control Unit designation, and to direct his reassignment back to an open-population prison.

After the Plaintiff filed his reply **(# 37)** in support of his summary judgment motion, the Defendants moved **(# 39)** to strike that reply as failing to comply with D.C. Colo. L. Civ. R. 10.1(E), which requires pleadings to be double-spaced, and MSK Practice Standard (Civil) § V.H.3.a, which limits reply briefs to 10 pages.

Separately, the Defendants move **(# 27)** to dismiss two of the Plaintiff's claims, plus a portion of a third claim, pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, they argue that: (i) the portion of the Plaintiff's third claim that alleges that his disciplinary conviction (but not his assignment to the Control Unit) was secured without Procedural Due Process should be dismissed because the Plaintiff failed to plead facts showing that the nature of the discipline imposed gave rise to a protectible liberty interest, and that, even if he could show such an interest, the procedural protections afforded him were sufficient; (ii) the sixth claim, alleging an APA violation, should be dismissed because the Program Statement is not a "legislative rule" subject to the APA's notice and comment requirements; and (iii) the seventh claim, apparently alleging some violation of "notice and comment" requirements of 18 U.S.C. § 4012, fails to state a claim because that statute contains no language imposing such a requirement.

## **ANALYSIS**

Throughout this analysis, the Court has liberally construed the Plaintiff's *pro se* filings. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). In other words, if the Court if can reasonably read the pleadings to state a valid claim on which the Plaintiff could prevail, it should do so despite the Plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. *Hall*, 935 F.2d at 1110. However, the

6

requirement that the Court read the plaintiff's pleadings broadly does not relieve the plaintiff of the burden of complying with procedural rules and alleging sufficient facts on which a recognized legal claim could be based; in these respects, his is subject to the same requirements as any attorney appearing before the Court, notwithstanding his lack of legal training. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

### A. Plaintiff's motion for summary judgment and Defendants' motion to strike

Before turning to the merits of the Plaintiff's summary judgment motion, the Court first addresses the Defendant's motion to strike.[2] In one sense, the Defendants are technically correct; the Plaintiff's handwritten reply is not double spaced. However, the Defendants have not alleged that the brief is difficult to read, nor otherwise articulated any prejudice[3] that has resulted from the Plaintiff's failure to comply with the Local Rule. Although this Court favors the predictable application of procedural rules according to their terms, it does so mindful that the rules are

---

[2] No Federal Rule of Civil Procedure contemplates "striking" of improperly-formatted briefs. *Compare* Fed. R. Civ. P. 12(f) (permitting striking of "scandalous" or "impertinent" allegations in "pleadings"). Moreover, the operation of the Court's Electronic Case Filing System – which does not permit filed documents, even those "stricken" by the Court, to be deleted from a case's docket – make such a remedy impractical. The Court will construe the Defendants' request to "strike" the Plaintiff's reply brief to be a request that the Court disregard that brief as non-compliant.

[3] The Court does not necessarily agree with the Defendants that, had the Plaintiff double-spaced his 7-page reply, he would have exceeded the Court's 10-page limit on reply briefs. The Court notes that the Plaintiff's handwriting appears to allow for approximately 10 words per line, or a total of approximately 300 words per page. By contrast, the Defendants' response to the Plaintiff's summary judgment motion appears to contain approximately 15 words per line, or approximately 330 words per page. Had the Plaintiff formatted his reply brief with the same typeface and spacing as the Defendants' brief, it likely would have been <u>shorter</u> than the allowed 10 pages. Even assuming that the brief had exceeded the 10 page maximum, the Plaintiff could have requested leave to exceed the page limit. Defendants have not argued any substantive prejudice arising for the length of the brief.

written with the intent of effectuating a particular goal. Here, the Local Rule requiring double-spaced pleadings is intended to ensure that the pleadings are easily readable. The Plaintiff's handwritten pleadings are indeed legible, and thus, meet the Court's goal, notwithstanding their single-spacing. Strict enforcement of the rule in this circumstance would serve no meaningful purpose, other than to multiply court filings and delay consideration of the substantive motion, or to deprive the Plaintiff of an opportunity to be heard. Accordingly, the Defendants' motion is denied.

Turning to the substance of the Plaintiff's motion, Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

Here the Plaintiff has the burden of proof on a claim. As a consequence, he must establish <u>every</u> element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the Plaintiff has met his burden, to avoid summary judgment, the Defendants must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. Conversely, if there is no genuine dispute as to any material fact, no trial is required, and a court simply applies the law to the undisputed facts and enters judgment.

The Defendants dispute many of the facts alleged by the Plaintiff. Among other things, the Defendants point to evidence that, taken in the light most favorable to them, demonstrates that the Plaintiff was aware of the terms of the Program Statement prior to the shakedown; that although the Plaintiff's property was inventoried at the time of his arrival in Florence, the inventory did not locate – much less implicitly approve of his possession of – the PSRs; that the Plaintiff was only cited for possessing copies of the 1994 PSR, not the 2005 PSR prepared for his upcoming sentencing; and that the Probation Officer preparing the 2005 PSR did not advise the Plaintiff that the 1994 PSR would be incorporated by reference into the 2005 PSR, nor advise the Plaintiff to review and retain a copy of the 1994 PSR.

The Plaintiff brings only an as-applied vagueness challenge to the regulation and Program Statement. As-applied challenges are necessarily highly fact-dependent, and the Court is cannot resolve such a challenge on a disputed factual record. *See e.g. U.S. v. Reed*, 114 F.3d 1067, 1070 (10th Cir. 1997). The disputed facts are especially germane in this case. For example, there is a genuine factual dispute as to the extent of notice that the Plaintiff had as to the contents of the

Program Statement. A vagueness challenge is fundamentally premised on a lack of notice, and can be overcome with evidence that the affected individual knew that his or her conduct was at risk. *See Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). Accordingly, the Court finds that there are genuine factual disputes requiring trial, and the Plaintiff's Motion for Summary Judgment is denied.

### B. Defendants' Motion

The Defendants move to dismiss two of the Plaintiff's claims, and a portion of a third claim, pursuant to Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

Taking the challenged claims in numerical order, the Defendants first seek to dismiss that portion of the Plaintiff's third claim, which sounds as a deprivation of the right to Procedural Due Process. The Defendants view this claim as having two separate Due Process challenges: (i) that the disciplinary conviction for possession of contraband, and the Plaintiff's subsequent loss of commissary privileges as punishment, was secured without adequate Due Process protection; and (ii) that the Control Unit designation, which relied in part on his disciplinary record – including the contraband offense – occurred without sufficient Due Process.

The Defendants seek to dismiss only that portion of the claim that may allege a Due Process violation resulting solely from the disciplinary conviction and its attendant loss of commissary privileges. The Defendants argue that the loss of commissary privileges is not a sufficient restraint on the Plaintiff's liberty so as to give rise to a Due Process claim. *See generally Sandin v. Conner*, 515 U.S. 472, 486 (1995) (in prison setting, a liberty interest is implicated, and Due Process protection attaches, only when the inmate is faced with a punishment that significantly differs from the typical incidents of prison life); *Muhammad v. Finley*, 74 Fed.Appx. 847, 849 (10th Cir. 2003) (unpublished) (no liberty interest in suspension of commissary privileges), *citing Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996). In addition, the Defendants argue that the Plaintiff was afforded sufficient procedural protections during the disciplinary process.

In response, the Plaintiff essentially concedes that, as a stand alone denial of Procedural Due Process claim, a claim challenging only the disciplinary conviction and its direct punishment would fail. In this respect, then, the Defendants' Motion to Dismiss is granted, and any claim alleging a Due Process violation strictly as it relates to the disciplinary conviction as a result of the

11

loss of commissary privileges is dismissed. However, this dismissal does not prevent the Plaintiff from asserting what the Court understands to be the actual focus of his Due Process claim: the disciplinary conviction caused, in part, the Control Unit assignment, and because Control Unit placement arguably implicates a liberty interest, *see generally Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (assignment to highly-restrictive "Supermax" confinement – similar to that alleged by the Plaintiff here – implicated inmate's liberty interest), the Plaintiff was entitled to Due Process protection during the disciplinary hearing. The Defendants' motion does not seek consideration of this aspect of the Due Process claim, and thus, the claim will proceed in this respect.

Next, the Defendants seek dismissal of the Plaintiff's sixth claim, alleging an APA violation, arguing that the Program Statement is not a "legislative rule" subject to the APA's notice and comment requirements. The APA generally requires that an Administrative agency give notice of proposed rule changes and allow the public to comment upon them. However, the APA's requirements do not apply to "interpretive rules, general policy statements, or rules of agency organization, procedure or practice." 5 U.S.C. § 553(b)(3)(A). Determining whether an agency rule is an exempt from or covered by the APA is a matter that has caused courts considerable difficulty. *See generally American Mining Congress v. Mine Safety and Health Admin.*, 995 F.2d 1106, 1108-09 (D.C. Cir. 1993) (collecting cases). In *American Mining Congress*, the court set forth several factors that should be considered in determining whether a particular agency action was a "legislative rule" under the APA: (i) whether, in the absence of the agency's rule, the legislative basis for the agency's enforcement of the rule would be inadequate; (ii) whether the agency sought to have the rule published in the Code of Federal Regulations; (iii)

12

whether the agency purported to create the rule pursuant to its general legislative authority; and (iv) whether the rule repudiates or is irreconcilable with a prior legislative rule. *Id.* at 1112.

In considering these factors at the preliminary stage of a motion to dismiss, the Court observes that, at a minimum, the fourth factor might to be implicated in this case. 28 C.F.R. § 543.11(d) sets forth the BOP's position regarding inmate possession of legal materials. It states "Staff may allow an inmate to possess legal materials in accordance with the provisions on inmate legal activities (see § 543.11 of this chapter)." The cited section, in turn, defines the term "legal materials" to include "the inmate's pleadings and documents (<u>such as a presentence report</u>) that have been filed in court . . ." 28 C.F.R. § 543.11(d) (emphasis added). Thus, there is some reason to believe that the Program Statement repudiates or is inconsistent with the BOP's established legislative rules published in the Code of Federal Regulations.

The Defendants argue that there is no inherent conflict between the Program Statement and the published rules because § 543.11(d) is stated in permissive terms – that "Staff <u>may</u> allow" inmates to possess legal materials, but are not required to do so. However, an argument could be made that, even if § 543.11(d) is stated permissively, the Program Statement is still inconsistent with it insofar as the Program Statement is mandatory, albeit in the opposite direction – that is, the Program Statement appears to categorically prohibit staff members from permitting inmates to possess PSRs, thereby usurping any permissive discretion that the regulation appears to create.

At this stage, in the absence of a fully-developed factual record and comprehensive briefing on the relevant APA issues, the Court is not prepared to say that the Plaintiff could not prove a set of facts that might entitle him to relief on his APA claim. Accordingly, the Defendants' motion to dismiss the sixth claim pursuant to Rule 12(b)(6) is denied.

Finally, the Defendants seek dismissal of the Plaintiff's seventh claim which appears to allege some violation of "notice and comment" requirements of 18 U.S.C. § 4012. As the Defendants point out, the cited statute contains no such requirement. The statute permits the staff of the BOP to, "pursuant to the rules and regulations of the Director . . ., summarily seize any object . . . possessed by an inmate in violation of a rule, regulation or order." The Plaintiff's explanation of this claim in his response to the Motion to Dismiss sharpens somewhat the claim that is apparently stated in the Complaint. The Plaintiff's apparent theory of this claim is that because the Program Statement permitting seizure of the PSRs is void as violative of the APA as set forth in the sixth claim, and because no other regulation of rule allegedly prohibits possession of the PSRs, the Defendants' seizure of the PSRs was not "pursuant to the rules and regulations of the Director," and thus, in violation of 18 U.S.C. § 4102. However, upon further contemplation, the Plaintiff concluded that "absent an Administrative exclusionary rule, it appears the only relief available to the Plaintiff on this issue would be return of his confiscated PSRs, relief which he does not seek." Accordingly, the Plaintiff consents to dismissal of the seventh claim. Consistent with that concession, the Court grants the Defendants motion with regard to this claim.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Partial Summary Judgment **(# 24)** is **DENIED**. The Defendants' Motion to Dismiss **(# 27)** is **GRANTED IN PART**, insofar as that portion of the Plaintiff's third claim that can be read to allege a Procedural Due Process claim resulting from a disciplinary conviction resulting in commissary restriction, and the Plaintiff's seventh claim for relief under 18 U.S.C. § 4102 are **DISMISSED**, and **DENIED IN PART**,

insofar as the Defendants have not challenged that portion of the Plaintiff's third claim that alleges that his disciplinary conviction led to his Control Unit placement, and thus implicated a liberty interest entitling him to Due Process during the disciplinary proceeding, and the Plaintiff's sixth claims sufficiently states a claim under the APA.  The Defendants' Motion to Strike **(# 39)** the Plaintiff's reply in support of his summary judgment motion is **DENIED**.

Dated this 26th day of March, 2008

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge