IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-00498-MSK-KLM

MARK JORDAN,

       Plaintiff,

v.

R.WILEY, Warden, ADX Florence,
H. LAPPIN, Director, Bureau of Prisons, and
U.S. BUREAU OF PRISONS,

       Defendants.

---

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND OVERRULING OBJECTIONS

---

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Designate Administrative Record (**# 75**), the Plaintiff's response (**# 77**), and the Defendants' reply (**# 79**); the Plaintiff's motion to Designate Administrative Record (**# 76**), the Defendants' response (**# 78**), and the Plaintiff's reply (**# 83**); the Defendants' Motion for Summary Judgment (**# 104**), the Plaintiff's response (**# 118**), and the Defendants' reply (**# 122**); the Plaintiff's Objections (**# 121**) to the June 17, 2009 Recommendation (**# 119**) of United States Magistrate Judge Kristen L. Mix that the Plaintiff's Motion for Temporary Restraining Order (**# 102**) be denied; and the Plaintiff's Motion to Supplement (**# 130**) his summary judgment response, the Defendants' response (**# 132**), and the Plaintiff's reply (**# 133**).[1]

---

[1] Without necessarily finding that it is supported by good cause, the Court grants the Plaintiff's Motion to Supplement.  The supplementation does not alter the analysis herein.

## **FACTS**

The Court has previously addressed the allegations in this case in its March 26, 2008

Order **(# 47)**, *see also Jordan v. Wiley*, 2008 WL 821773 (D. Colo. March 26, 2008)

(unpublished), and to the extent necessary, that recitation is deemed incorporated herein.  It is

sufficient to note that in this case, the Plaintiff, an inmate of the Federal Bureau of Prisons

("BOP"), raises various challenges to BOP policies regarding inmate possession of contraband –

specifically, inmates' Presentence Investigation Reports ("PSRs") and Statements of Reasons

("SORs") relating to those inmates' sentencings.  In October 2005, the Plaintiff was disciplined

for his possession of PSRs, and that disciplinary conviction was one of the factors that was later

considered in deciding to assign him to the highly-restrictive Control Unit.

The Plaintiff currently asserts six causes of action: (i) a claim that Prohibited Act Code

305 ("Code 305"), found at 28 C.F.R. § 541.13, a regulation prohibiting possession of

contraband, is unconstitutionally vague as applied to the Plaintiff in violation of the Fifth

Amendment to the U.S. Constitution; (ii) that the BOP Program Statement

1351.05(12)(a)(2)(d)(1), governing inmate possession of PSRs, is unconstitutionally vague as

applied to the Plaintiff in violation of the Fifth Amendment; (iii) a claim that the Plaintiff's

assignment to the Control Unit deprived him of Procedural Due Process, in violation of the Fifth

Amendment; (iv) a claim that the Plaintiff's assignment to the Control Unit was "arbitrary [and]

capricious," thus violating his right to Substantive Due Process in violation of the Fifth

Amendment; (v) a claim that the BOP Program Statement and the disciplinary conviction of the

Plaintiff "is contrary to law and short of statutory rights," including Fed. R. Crim. P. 32 and

various statutory and regulatory provisions; and (vi) a claim that the BOP's promulgation of Program Statement 1351.05(12)(a)(2)(d)(1) occurred without public notice and comment as required by the Administrative Procedures Act ("APA"), 5 U.S.C. § 553.

Both parties have filed motions **(# 75, 76)** requesting that the Court "designate" the administrative record applicable to the Plaintiff's sixth claim. Each party has proposed an "Administrative record" consisting of a list of various documents, although neither side has attached the actual documents that it lists. The Defendants' motion includes a discussion regarding the Plaintiff's fourth and fifth claims, which the Defendants deem unclear but acknowledge could conceivably be construed to assert some form of APA claim. However, the Defendants contend that, to the extent the fourth and fifth claims purport to assert APA claims, those claims are barred by sovereign immunity. The Plaintiff responds that such arguments may be properly raised in a Rule 12 motion, but are not the proper subject of a motion regarding the Administrative record.

The Defendants also seek summary judgment **(# 104)** on the Plaintiff's first three claims for relief, arguing: (i) with regard to the vagueness challenges in claims one and two, the Plaintiff cannot show that Code 305 and the Program Statement fail to give sufficient notice of the conduct prohibited, cannot show that they are so unspecific as to permit arbitrary enforcement, and cannot show that they are not reasonably related to legitimate penological interests; and (ii) with regard to claim three, the Plaintiff cannot show that his placement in the Control Unit was the result of the discipline he received for possessing PSRs, and cannot show that he was denied either substantive or procedural Due Process with regard to that decision. After filing a response to this motion, the Plaintiff moved to supplement **(# 130)** his response

3

with the affidavit of a fellow inmate, which the Plaintiff contends demonstrates issues relating to notice of the prohibition against possession of PSRs and disparate application of that rule.

Finally, the Plaintiff sought **(# 102)** a temporary restraining order under Fed. R. Civ. P. 65(a)(2), relating to the BOP's confiscation of a copy of a deposition transcript in the Plaintiff's possession that contained certain notes taken by the Plaintiff. The Plaintiff requested, among other things, an order directing the return of the transcript or, in the alternative, destruction of the transcript to prevent his annotations from being viewed by opposing counsel. The Court referred the matter to the Magistrate Judge, and on June 30,2009, the Magistrate Judge recommended **(#121)** that the motion be denied. Among other things, the Magistrate Judge found that the conduct to be enjoined was unrelated to the claims at issue in the action and that the Plaintiff had failed to show that an injunction would be consonant with the public interest. The Plaintiff filed timely Objections **(# 121)** to the Recommendation, raising a number of alleged factual and legal errors committed by the Magistrate Judge.

## ANALYSIS

### A. Standard of review

Throughout this analysis, the Court has liberally construed the Plaintiff's *pro se* filings. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). In other words, if the Court if can reasonably read the pleadings to state a valid claim on which the Plaintiff could prevail, it should do so despite the Plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. *Hall*, 935 F.2d at 1110. However, the requirement that the Court read the plaintiff's pleadings broadly does not relieve the plaintiff

4

of the burden of complying with procedural rules and alleging sufficient facts on which a recognized legal claim could be based; in these respects, his is subject to the same requirements as any attorney appearing before the Court, notwithstanding his lack of legal training.  *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

### B.  Motions to designate Administrative record

Both sides have filed motions requesting that the Court "designate" an Administrative record for purposes of the Plaintiff's APA challenge to the BOP's promulgation of the Program Statement.  The briefing on these motions does not squarely identify any particular dispute between the parties as to whether a particular document does or does not belong in the Administrative record on this issue, nor otherwise present any matters relating specifically to the Administrative record that require consideration by this Court.  Indeed, it is unclear how the Court – which lacks the parties' familiarity with the history of the Program Statement – can "designate" an Administrative record that adequately captures the BOP's consideration and promulgation of that Statement.  The Court observes that both the Plaintiff (**# 64**) and Defendants (**# 75**, Ex. A-1) have identified the documents they propose be included in the Administrative record on this issue.  Neither side has offered any justifications why the documents proposed by their adversary should not be included, and thus, it appears to the Court that the Administrative record should contain all of the documents listed by either party.[2]

The parties further request that the Court set a briefing schedule on the APA issue.

---

[2]To the extent a party believes that a document proposed by their adversary is not appropriate for consideration with regard to the substantive merits of the claim, they may address the reasons therefor in the briefing of the substantive issue.

Neither side has proposed a particular briefing schedule, and, in the absence of an indication regarding the time necessary for the parties to complete briefing, the Court directs that the Plaintiff file his brief on the merits of claim six within 30 days of the date of this Order, the Defendants shall have 30 days from the filing of the Plaintiff's brief to file a brief in response, and the Plaintiff shall have 20 days from the filing of the response brief to file a reply.

The crux of the parties' motions regarding designation of the Administrative record appears to be a dispute over whether claims four and five also present APA-type issues warranting APA-style briefing and resolution. The Court agrees with the Plaintiff that, to the extent the Defendants' arguments challenge the ability of the Plaintiff to overcome sovereign immunity on claims four and five, those arguments should be presented in an appropriate dispositive motion under Rule 12 or Rule 56.

On the other hand, the Court does not read these claims as raising an APA-type challenge under 5 U.S.C. § 553. Unlike claim six, which unambiguously deals with a BOP statement of policy, the event referenced in claim four – the assignment of the Plaintiff to the Control Unit – does not entail the BOP's promulgation of a "rule" as defined in 5 U.S.C. § 551(4). Rather, the Plaintiff's allegation that the assignment to the Control Unit was "arbitrary and capricious" and "an abuse of discretion" seems to be an invocation of the rights secured under the doctrine of "substantive due process" – that is, the notion that governmental action that deprives an individual of a constitutionally-protected interest must be based on a rational, rather than completely arbitrary, justification. *See e.g. Dias v. City and County of Denver*, 567 F.3d 1169, 1181 (10th Cir. 2009). The Court understands the Plaintiff to argue in claim four that, even if the BOP observed all the proper procedures in determining whether to assign him to the Control

Unit,[3] its decision to do so was nevertheless so arbitrary and lacking in rational justification that the Plaintiff's substantive due process" rights were implicated.  Because the Court does not construe claim four to invoke rights under the APA, there is no need for APA-style briefing of this claim.

Claim five alleges that the BOP's Program Statement and the Plaintiff's disciplinary conviction for possession of his PSRs "is contrary to" various laws, including Fed. R. Crim. P. 32 (governing preparation, dissemination, and consideration of PSRs), 18 U.S.C. § 3552 (providing for preparation and dissemination of PSRs); 5 U.S.C. § 552 and 552a (providing for public access to governmental records), and various BOP regulations relating to inmate possession of legal materials.  The Court does not consider this claim to raise an APA-style challenge to the BOP Program Statement – such a claim would precisely duplicate claim six. Nor does it consider that portion of the claim that challenges the Plaintiff's disciplinary conviction for possession of PSRs to constitute an APA-style challenge, as the conviction does not appear to constitute a "rule" under 5 U.S.C. § 551(4).  As best the Court can determine, this claim simply amplifies the assertion in claim four that assignment of the Plaintiff to the Control Unit based, in part, on the conviction for possession of PSRs was arbitrary and capricious[4]; the citations to various statutes and rules that emphasize the importance of prisoners being permitted

---

[3]Claim three unambiguously challenges whether the Plaintiff received "procedural due process" with regard to that assignment.

[4]To the extent the Plaintiff seeks to challenge his actual disciplinary conviction for possession of the PSRs, the Court's March 26, 2008 Order explains that because the only direct results of that conviction was the loss of commissary privileges, no constitutional interests were implicated.  Without an intrusion upon a constitutionally-protected interest, the Plaintiff cannot challenge his conviction unless some other authority creates an alternative means for him to do so.  None of the statutes or rules cited in claim five purport to create such a right.

7

to access and review their PSRs underscore the Plaintiff's contention that interpreting BOP rules in a way that punishes inmates for engaging in such access and review must necessarily be without a rational justification. Accordingly, the Court deems only claim six to present an APA-type challenge, and thus, the briefing described above shall only involve claim six.

### C. Summary judgment motion

1. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the moving party does not have the burden of proof at trial, it may point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated

to prove.  If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

2. Vagueness challenges

The Defendants seek summary judgment on the Plaintiff's first two claims: void for vagueness challenges to both Code 305 and the Program Statement.  Because they inform one another, the Court addresses both Code 305 and the Program Statement jointly, even though the Plaintiff challenges them separately.

"Code 305" is a BOP rule found at 28 C.F.R. § 541.13, Table 3, Prohibited Act Code 305.  28 C.F.R. § 541.13(a) explains that "there are four categories of prohibited acts," classifying them as "Greatest, High, Moderate, and Low Moderate."  The rule correlates each category of prohibited act to a table specifying the sanctions that may be imposed on an offender committing the specified act.  *Id.*  Code 305 is assigned to an offense in the "Moderate" category, and defines the offense as "possess[ion] of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels."

Program Statement 1351.05 is entitled "Release of Information."  It was issued in September 2002.  It provides "procedures for the release of requested records in the possession of the Federal Bureau of Prisons," and is intended to supplement the provisions of the Freedom of Information Act, the Privacy Act, and "Department of Justice (DOJ) regulations concerning the production or disclosure of records or information."  *Id.*, Part 1, §1.  Part 2, Section 12(d)(1) of the Program Statement reads:

9

> Federal Presentence Reports (PSR) and Statements of Reasons
> (SOR) from Judgments in Criminal Cases. For safety and security
> reasons, inmates are prohibited from obtaining or possessing
> photocopies of their PSRs, SORs, or other equivalent non-U.S.
> Code sentencing documents (e.g., D.C., state, foreign, military,
> etc.). Inmates violating this provision are subject to disciplinary
> action.

The interpretive portion of the Program Statement elaborates on an apparent exception to this

rule:

> This prohibition does not apply to inmates in Bureau of Prisons
> custody with a need to review their PSRs prior to sentencing. For
> example, a pretrial inmate scheduled for sentencing may possess
> and review the PSR in preparation for sentencing. After
> sentencing, however, the inmate is prohibited from retaining a
> copy of the PSR.

The interpretive portion goes on to acknowledge the need for inmates to review their own PSRs

and to attach copies of those documents to court filings. It states that inmates can "request[ ] an

opportunity to access and review these records with unit staff," and can complete a specified

form when copies of a PSR are necessary for an inmate's legal filings.

The key facts with regard to the vagueness claims are not in dispute. On October 27,

2005, the Plaintiff was written up for violation Code 305, based on his possession of two copies

of his PSR from a 1994 conviction. At the time, the Plaintiff was awaiting sentencing on a 2005

conviction. He contends that the 1994 PSR had been provided to him by the U.S. Attorney as

part of discovery in the 2005 case, and furthermore, that the Probation Officer preparing the PSR

with regard to the 2005 conviction had stated an intention to rely upon information in the 1994

PSR, had "walked through" the information in the 1994 PSR with the Plaintiff, and had

suggested that the Plaintiff "review" the 1994 PSR for other inaccuracies.

In general, the "void for vagueness" doctrine requires that a prohibitory law define the

10

conduct to which it applies "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Gonzales v. Carhart*, 550 U.S. 124, 148-49 (2007); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497-99 (1982) (describing sliding scale of analysis, depending on whether the prohibition is economic, civil, or criminal in nature). The Court notes that the Plaintiff has explicitly limited his vagueness challenge to the manner in which Code 305 and the Program Statement were applied to him; he does not challenge them as being vague on their face. In an "as-applied" vagueness challenge, the Court first considers whether the challenged rule operates to chill the exercise of constitutional rights. *U.S. v. Platte*, 401 F.3d 1176, 1189-90 (10th Cir. 2005). If no constitutionally-secured rights are implicated by the rule, the Court's vagueness analysis is limited to ascertaining whether the rule "clearly applies" to the conduct committed by the party charged. *Id.*

The Court begins its analysis by noting that the parties disagree as to whether an inmate's possession of PSRs constitutes activity protected by the First Amendment. *Docket* # 118 at 2, *citing Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002) (Plaintiff arguing that First Amendment "bars the government from dictating what we see or read or speak or hear") (emphasis added). The Court need not resolve that particular issue. Even assuming inmate possession of PSRs is encompassed by the First Amendment, the BOP may nevertheless infringe that right where the governmental interest in regulating conduct by inmates outweighs the First Amendment interests of the inmate. *Compare Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1073-75 (1991) (state's interest in regulating commercial speech by lawyers outweighed intrusion upon lawyers' First Amendment rights). The Program Statement easily satisfies such a

11

balancing test.  The Program Statement itself itemizes the BOP's interest in restricting inmate possession of PSRs: "The Bureau has documented an emerging problem where inmates pressure other inmates for a copy of their PSRs and SORs to learn if they are informants, gang members, have financial resources, etc.  Inmates who refuse to provide the documents are threatened, assaulted, and/or seek protective custody."  Moreover, the Program Statement clearly accommodates inmates' needs (or even simple desires) to review the contents of their PSRs, and makes available a procedure by which such review can be had under the supervision of prison officials.  (At bottom, the inmate's interest is not in having the ability to <u>read</u> their PSRs, but merely the ability to <u>possess</u> them, an interest that has far less First Amendment ramifications.)  When significant concerns of protecting inmates against intimidation by other prisoners is balanced against the relatively minor inconvenience of being able to review one's PSR only in the presence of a prison official, the Court is comfortable that the BOP's interests greatly outweigh any minimal intrusion upon inmates' First Amendment rights.

Where First Amendment concerns are not implicated, the only question to be answered in an as-applied vagueness challenge is whether the challenged regulation clearly applies to the conduct at issue.  Here, there can be little dispute that the Program Statement's provisions clearly apply to the Plaintiff's conduct.  The Program Statement provides that "inmates are prohibited from obtaining or possessing photocopies of their PSR," and it is undisputed that the Plaintiff possessed a photocopy of his PSR.  At this most basic level, the Plaintiff cannot dispute that the Program Statement clearly applied to prohibit the conduct in which he engaged.

The situation is no less clear when the exception for inmates awaiting sentencing is factored in.  The Program Statement provides that "a pretrial inmate scheduled for sentencing

may possess and review the PSR in preparation for sentencing," but that "[a]fter sentencing, however, the inmate is prohibited from retaining a copy of the PSR."  This argument might be availing to the Plaintiff if he were charged with improperly possessing a copy of the PSR prepared in conjunction with the 2005 conviction, but the undisputed facts are that the Code 305 citation was issued based on the Plaintiff's possession of the PSR relating to his 1994 conviction. The exception's terms clearly do not apply to this situation; the Plaintiff was not "scheduled for sentencing" with regard to the 1994 conviction, he was not in possession of the 1994 PSR in preparation for a sentencing with regard to the 1994 conviction, and the Code 305 violation clearly occurred "after sentencing" on the 1994 conviction, at which point the Plaintiff "was prohibited from retaining a copy of the [1994] PSR."

The Plaintiff offers several arguments to the effect that items in the 1994 PSR were essential to sentencing on his 2005 conviction and that he was affirmatively encouraged to review the 1994 PSR to ensure that the PSR on his 2005 conviction was accurate, but these arguments are unavailing.  The Program Statement specifically contains a mechanism by which an inmate with a need to review a PSR from a prior sentencing may do so under the supervision of a staff member.  Thus, the Court finds nothing vague in the application of the Program Statement to the facts of this case: to the extent that the Plaintiff needed to review his 1994 PSR to assess the accuracy of his 2005 PSR, his remedy was to contact his unit team to arrange an opportunity to review the 1994 PSR, not to retain possession of a copy himself.

Once it becomes clear that the Program Statement unambiguously prohibited the Plaintiff's possession of the 1994 PSRs, any confusion regarding the applicability of Code 305 is resolved.  The Program Statement makes clear that inmates may not possess PSRs, and thus, the

Plaintiff's possession of those PSRs clearly constituted "possess[ion] of anything not authorized for retention" in violation of Code 305.  Thus, the Court finds that no vagueness whatsoever in the application of Code 305 and the Program Statement in these circumstances.

The Plaintiff offers a variety of additional arguments in support of his vagueness challenge, although few warrant anything more than a cursory discussion.  The Plaintiff offers a convoluted argument that Code 305 and the Program Statement cannot be read in conjunction because they address different issues (*e.g.* Code 305 relates to "inmate discipline," while the Program Statement relates to "release of information"), are codified in different places, and "exist in entirely distinct regulatory universes."

This argument is entirely without merit.  One might criticize the BOP for maintaining a complex regulatory environment, but nothing in the void for vagueness doctrine entitles a person to have all of the information necessary to define the offense against him contained in a single document.[5]  *See e.g. U.S. v. McClain*, 545 F.2d 988, 1001-02 n. 30 (5th Cir. 1977) (rejecting vagueness challenge to National Stolen Property Act where determination of whether item was "stolen" required resort to substantive law of other nations; "It would have been impossible for the statutes to have explicitly described every type of theft that might fall within their purview").  The Program Statement (and in all likelihood many other BOP regulations) expressly advised inmates that possession of certain items in certain situations was prohibited; Code 305 simply sweeps up all of the various prohibitions contained in BOP regulations – such as the Program Statement – into a uniform disciplinary structure, much in the way that federal criminal statutes

---

[5]The Plaintiff himself concedes that the Court is not prevented "from otherwise viewing both provisions in its respective analyses" of each one individually.

14

frequently define offenses by reference to other statutory provisions.  *See e.g.* 18 U.S.C. § 1028A

(creating additional crime where individual uses false identification while committing a variety

of felonies defined in other provisions of law).

The Plaintiff also argues that the application of Code 305 in his situation was improper

because the 1994 PSRs were properly in his possession because they were "issued to him

through regular channels."  This argument stems from the fact that on October 20, 2005, the

Plaintiff arrived at the Florence, Colorado prison from a BOP facility in Englewood, Colorado.

Upon his arrival in Florence, his personal property was inspected and inventoried by Florence

officials.  He contends that because the 1994 PSRs were among the "eight inches of legal

materials" inspected by Florence officials and released to him, the documents were this "issued

to him" by prison officials "through regular channels."  This argument is pure sophistry.  The

mere fact that prison officials either overlooked the PSRs among the eight inches of legal

materials or may have failed to appreciate their contraband nature does not convert prohibited

items into permissible ones, nor otherwise constitute the prison "issuing" the documents to the

Plaintiff.  Pursued to its logical conclusion, this same argument would suggest that a failure of

prison officials to notice a weapon or cell phone hidden in an inmate's property during one

search would thereafter be deemed to have thereafter "issued" the property to the inmate, losing

the ability to punish the inmate for possession of such an item when discovered in a subsequent

search.  Nothing in Code 305 can reasonably read to create such a "gotcha!" scenario.

Two arguments by the Plaintiff do warrant some additional discussion, however.  First,

the Plaintiff points to 28 C.F.R. § 543.11(d), which provides that "An inmate's legal materials

include . . . the inmate's pleadings and documents (such as a presentence report) that have been

15

filed in court. . . ."  On the surface, this provision might be said to conflict with the Program

Statement's prohibition on inmates possessing PSRs, and this conflict might give rise to a claim

of vagueness.  However, a closer inspection of § 543.11(d) reveals no provision that guarantees

an inmate the right to retain possession of anything meeting the definition of "legal materials."

Indeed, §543.11(d)(2) states precisely the opposite: "The Warden may limit the amount of legal

materials an inmate may accumulate for <u>security</u> or housekeeping reasons." (Emphasis added.)

Where, as here, the BOP has determined that an inmate's possession of a particular item of legal

materials presents a security risk, § 543.11 authorizes the Warden to limit the inmate's ability to

possess that item.[6]  Thus, § 543.11 cannot be read as limiting the BOP's ability to restrict an

inmate's possession of certain types of legal materials, and thus, the regulation does not conflict

with or otherwise call into question the clarity of the Program Statement.

Finally, the Plaintiff contends that he received no actual notice of the September 2002

change to the Program Statement.  The Defendants contend that on October 2, 2002, the Warden

at the Plaintiff's facility issued a memorandum to the inmate population advising them of the

Program Statement.  That memorandum was broadcast over inmate televisions, and for inmates

without televisions, prison policy required Case Managers to hand-deliver the memo to inmates.

---

[6]The Court notes several other deficiencies with this argument. Section 543.11(d) appears to be a definitional regulation, clarifying what constitutes "legal materials."  It does not purport to create any particular entitlement in inmates to possess any "legal materials," much less the particular types of documents that are included in that definition.  The only portion of the regulation that refers to possession of legal materials is § 543.11(d)(2), which provides that "Staff <u>may</u> allow an inmate to possess those legal materials which are necessary for the inmate's own legal actions."  (Emphasis added.)  The use of the permissive "may" would suggest that an inmate's ability to possess even his own legal materials is subject to the sound discretion of prison officials.  *Compare* 28 U.S.C. §553.11(b) ("staff <u>shall</u> set aside [storage] space within each housing area for use by an inmate") *with* § 553.11(d) ("staff <u>may</u> allow an inmate to possess legal materials . . .") (emphasis added).

In addition, Program Statements were kept on file in the prison's law library and the Plaintiff admits having reviewed Program Statement 1351.05 between September 2002 and October 2005.  In response, the Plaintiff contends that his television access did not include the channel on which inmate memos were broadcast, denies that he was provided with a copy of any memo, and states that his awareness of changes to the Program Statements are limited to those that are officially announced in the Federal Register, of which the change to Program Statement 1351.05 was not.

The void for vagueness doctrine "focuses both on actual notice to citizens and arbitrary enforcement, [although] the more important aspect . . . is not actual notice, but the other practical element" of guidance to those enforcing the rule.  *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983).  However, as used in vagueness doctrine jurisprudence, the phrase "actual notice" does not refer to a person's knowledge of the existence of the statute or rule being applied, but rather, inquires whether that rule is phrased in sufficiently clear language as to allow a reasonable person to understand it.  *See U.S. v. Biro*, 143 F.3d 1421, 1426 (11th Cir. 1998) (" In determining whether a statute provides actual notice, we must decide whether an ordinary person could reasonably understand that his contemplated conduct is proscribed").  A well-worn axiom of the legal system is that "parties are presumed to know the law, and ignorance of the law is no excuse."  *Hermes Consolidated, Inc. v. U.S.*, 58 Fed.Cl. 409, 416 (Fed. Cl. 2003), *rev'd on other grounds sub nom. Tesoro Hawaii Corp. v. U.S.*, 405 F.3d 1339 (Fed. Cir. 2005).

One may rightly criticize a presumption that every person will instinctively be familiar with the myriad of laws and rules that prohibit or prescribe certain conduct, but with unusual

exceptions not applicable here,[7] Courts generally do not inquire into whether a party was subjectively aware of the existence and provisions of a particular law or rule.  Thus, the fact that the Plaintiff may have been subjectively unaware that the Program Statement prohibited his continued possession of PSRs is of no significance.   The question of "actual notice" requires only an inquiry into whether the Program Statement's prohibition was sufficiently clear for a person of ordinary intelligence to understand its operation – had that person had the foresight to inquire as to the rule's terms – and, as discussed above, the stark clarity of the Program Statement's terms makes misconstruction of its reach almost impossible.

Accordingly, the Court finds that there is no genuine dispute of material fact regarding the Plaintiff's vagueness challenges.  The Defendants are entitled to summary judgment on the Plaintiff's first and second claims.

### 3. Due process claim

Finally, the Defendants seek summary judgment on the Plaintiff's claim three, which alleges that his assignment to the Control Unit occurred without the requisite procedural due process protections compelled by the Fifth Amendment.

To establish a procedural due process claim, a person must show: (i) that he was deprived of a constitutionally-protected liberty or property interest; (ii) that he was entitled to certain procedural protections incident to that deprivation; and (iii) that he did not actually receive the protections to which he was entitled.  *See Couture v. Board of Education*, 535 F.3d 1243, 1257 (10th Cir. 2008).  The parties agree that the assignment of the Plaintiff to the Control Unit

---

[7]A small number of crimes include, as an essential element, knowledge that one's actions were actually prohibited by law.  *See e.g. United States v. Freed*, 401 U.S. 601, 612 (1971).

constituted a deprivation of a protected liberty interest, and thus, the only questions presented are what procedural protections was the Plaintiff entitled to prior to such a decision and what procedural protections he actually enjoyed.

The facts relevant to this claim are also undisputed.  On November 15, 2005, the Plaintiff was given notice that he had been proposed for placement in the Control Unit.  The notice advised the Plaintiff that the proposal was the result of the Plaintiff's May 2005 criminal conviction for having murdered a fellow inmate in 1999.  The notice advised the Plaintiff that he had the right to the assistance of a staff member during the hearing, the right to call witnesses, the right to present documentary evidence, the right to be present at the hearing, the right to a copy of the Hearing Officer's written decision, and the right to appeal the decision to the Warden of the facility.  The Plaintiff invoked his right to the assistance of a staff member, and Chaplain Keith Powley appeared at the Control Unit hearing on December 13, 2005.  Although the Plaintiff designated six witnesses to testify on his behalf, he later waived the appearance of three, submitted written statements from two, and offered the live testimony of the remaining witness. The Plaintiff also submitted documents on his own behalf, but waived his right to be present at the hearing, instead submitting his own written statement.  On February 3, 2006, the Hearing Officer issued a report concluding that the Plaintiff should be placed in the Control Unit.  In support of that finding, the Hearing Officer relied primarily on the fact of the murder of the fellow inmate, but did not that the Plaintiff has an extensive disciplinary record.[8]  On or about June 16, 2006, the Plaintiff filed a grievance requesting a reduction of his Control Unit sentence

---

[8]The report lists approximately 30 disciplinary convictions for the Plaintiff, one of which is the November 2, 2005 conviction for possession of the PSRs.

and complaining of, among other things, the Hearing Officer's consideration of "two disciplinary infractions for, respectively, threatening bodily harm and possession of contraband," in that these offenses "are not alleged to have occurred "pending actual placement."[9]  On July 26, 2006, the Warden responded that "in all fairness, the incident reports for Threatening and Possession of Contraband were minor and are, hereby removed from consideration."  Nevertheless, based on the fact of the murder of the fellow inmate, the Warden agreed that a 65-month stint in the Control Unit was appropriate.

The Plaintiff contends that the burden is on the Defendants to show that the procedural protections he received were adequate, rather than the burden being on him to show they were inadequate.  In support of this contention, he relies upon *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1344 (10th Cir. 2007) and *Wilkinson v. Austin*, 545 U.S. 209, 226-27 (2005) (which he contends establishes this rule by "negative implication").  Neither case stands for that proposition – *DiMarco* merely finds that "Wyoming provided adequate procedural protections," without specifying which party had the burden to prove that fact, and *Wilkinson* says nothing whatsoever about which party bears that burden.

In contrast, several cases stand for the proposition that the burden is on the inmate to show that procedures afforded were deficient.  *See e.g. Lile v. Simmons*, 143 F.Supp.2d 1267, 1273 (D. Kan. 2001) *and cases cited therein*.  Ultimately, however, because the relevant facts are undisputed, the question of who has the burden of proof is not decisive.

---

[9]It is not entirely clear that the "possession of contraband" conviction referred to in this grievance is the conviction for possession of the PSRs.  On October 7, 1999, the Plaintiff was convicted of two offenses – possessing a dangerous weapon and threatening bodily harm – both of which are mentioned by title in the grievance.

The undisputed facts show that the Plaintiff received all of the procedural protections required in such circumstances.  Proceedings involving the discipline or assignment of prisoners do not give rise to "the full panoply of rights due a defendant" in criminal proceedings.  *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974).  Rather, a prison hearing that threatens an inmate's liberty interests requires only that the inmate receive: (i) advance written notice of the disciplinary charges; (ii) an opportunity, where consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (iii) a written statement by the factfinder of the evidence relied on and the reasons for the decision.[10]  *Davis v. Corrections Corp. of America*, 131 Fed.Appx. 127, 129 (10th Cir. 2005) (unpublished); *Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004).  Here, the record is undisputed that the Plaintiff received advance notice of the proposed Control Unit assignment and the reasons therefor, that he was given the opportunity to call witness and submit a written statement and other evidence on his behalf, and that he received a copy of the Hearing Officer's decision.

The Plaintiff's response brief primarily argues that the hearing he received was procedurally deficient because he was not given an opportunity to challenge the sufficiency of the prior disciplinary conviction for possession of the PSRs.  He contends he was advised that the Hearing Officer refused to "rehear prior disciplinary proceedings" and would not "consider

---

[10]Two additional elements inform the substantive due process analysis of whether the Hearing Officer's decision was arbitrary and capricious: the Hearing Officer must have been "impartial" (*i.e.* that the Hearing Officer was not involved in the investigation or presentation of the charges being considered) and the decision must be supported by "some evidence," even if "meager."  *Gwinn*, 354 F.3d at 1219, 1220.  In a substantive due process analysis, this Court does not undertake an examination of the entire record, independently assess witnesses' credibility, or re-weigh the evidence. *Id.*  The Defendants have not sought summary judgment on the Plaintiff's substantive due process claim, and thus, the Court does not reach it at this time.

an attempt to reverse or repeal a prior finding of a disciplinary violation." As the foregoing discussion indicates, the procedural protections attendant to the deprivation of a liberty interest in these circumstances do not include a right to re-litigate issues that are not the central focus of the hearing. The purpose of the hearing was to evaluate whether the Plaintiff should be assigned to the Control Unit, not to re-litigate prior disciplinary convictions. Accordingly, the refusal of the Hearing Officer to entertain challenges to prior discipline does not constitute a deprivation of procedural due process.

The Plaintiff also contends that "he was not permitted to present any witnesses on his behalf," and that had he been given that opportunity, he would have called his case manager (to "explain that Plaintiff did not have a television" when the memo regarding the Program Statement was promulgated and to state that he could not specifically recall supplying the Plaintiff with a paper copy of that memo), the officer who inventoried the Plaintiff's goods upon arrival in Florence (for the proposition that he received the PSRs "through regular channels"), or that he "might have called his criminal defense attorney" to "verify that he needed his PSR to prepare for sentencing." The Plaintiff supports this contention with his own affidavit to this effect,[11] but this affidavit is inconsistent with the Hearing Officer's report, which, among other things, notes that the Plaintiff, through his staff representative, waived the right to present three of his listed witnesses, presented written statements from two more of his witnesses, and offered

---

[11]The Plaintiff also points to the Defendants' admission that he was not permitted to present witnesses on his behalf at "his November 2, 2005 UDC hearing," but that hearing is not the same as his Control Unit hearing in December 2005, which is the subject of the due process claim.

the live testimony of Lieutenant Bier.[12]  A party opposing a motion for summary judgment cannot create a genuine dispute of fact by simply offering a "sham affidavit" that disputes facts that are clearly established by otherwise reliable evidence in the record.  *See generally Juarez v. Utah*, 263 Fed.Appx. 726, 734 (10th Cir. 2008) (unpublished)*, citing Burns v. Board of County Commissioners*, 330 F.3d 1275 (10th Cir.2003) and *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir.1986).  Here, both the documentary evidence from the Control Unit hearing and the Plaintiff's own deposition refute the contention that he was not permitted to call witnesses.  *See* Plaintiff's deposition at 56-59[13] ("Q: Did other witnesses appear at the hearing for you? A: I don't believe anybody actually appeared in person.  I believe that there was – as a matter of fact, I do.  There was Lieutenant Bier . . . who appeared in person.  And other than that, I think there were some written statements gathered").  Under the analysis in *Burns* and *Franks*, the Court finds that the Plaintiff's current contention that he was not permitted to call witnesses at the hearing is a sham factual issue, and the Court disregards that obviously false contention.[14]

Because the undisputed facts show that the Plaintiff received all of the procedural protections he was entitled to for the December 2005 Control Unit hearing, the Defendants are entitled to summary judgment on the Plaintiff's procedural due process claim.

---

[12]In addition, the Hearing Officer notes that the Plaintiff's submission of documentary evidence included statements from 16 other individuals.

[13]Both parties submitted numerous items of evidence, including the Plaintiff's deposition, as a single, consolidated exhibit, thereby making it impossible for the Court to specifically direct the reader to the appropriate docket entry.

[14]The Court assumes that the Plaintiff has confused the discussion about calling witnesses at his Control Unit hearing with the fact that he was not permitted to call witnesses at a hearing concerning the Code 305 violation or some other hearing.  The Court emphasizes that its consideration of the Plaintiff's claim three is limited to the existence of procedural protections at the December 2005 Control Unit hearing.

### D.  Objections to Recommendation

Finally, the Court turns to the Plaintiff's Objections to the Magistrate Judge's Recommendation that his request for a temporary restraining order be denied.  Where a party files timely Objections to a Magistrate Judge's Recommendation under Fed. R. Civ. P. 72(b), this Court reviews the objected-to portions *de novo*.

The Court has carefully reviewed the Magistrate Judge's thorough Recommendation, as well as the Plaintiff's Objections.  In doing so, the Court concludes that the entire issue has been rendered moot.

The Plaintiff's motion requested a number of items of relief, most significantly: (i) the return or destruction of his deposition transcripts; (ii) a prohibition upon the Defendants' use of any information gleaned from the Plaintiff's annotations to that deposition; (iii) an injunction against the BOP's pursuit of an incident report involving the event, which charged the Plaintiff with a variety of offenses including possession of contraband and refusal to obey the orders of a staff member; and (iv) an injunction prohibiting Theresa Montoya, the staff member involved in the incident, from participating in this action on behalf of the Defendants.

In his Objections, the Plaintiff acknowledges that most of these issues have become moot.  He has since obtained an authorized copy of the transcript, and the proceeding involving the incident report has been concluded to his satisfaction.  He states that the only remaining issues with regard to his request for injunctive relief are: (i) the injunction against Ms. Montoya participating in this litigation; and (ii) directing the return to the Plaintiff of the annotated transcript.

Both issues are resolved by the Defendants' response to the Plaintiff's original motion.

In that response, the Defendants represented that Ms. Montoya had not reviewed the annotated transcripts, and that the transcripts had been placed in a sealed envelope pending final resolution of the incident report, at which point they would be destroyed.  This is sufficient to dispose of both the Plaintiff's contention that Ms. Montoya has somehow obtained "privileged" information from reviewing the Plaintiff's annotations, and disposes of the Plaintiff's request for return of the transcript or, in the alternative, its destruction.  The Plaintiff's lingering fear that the Defendants have somehow obtained a strategic advantage over him by virtue of Ms. Montoya reviewing his notes and annotations is entirely speculative, contradicted by Ms. Montoya's affidavit, and ultimately irrelevant, as the only remaining issues in this case are the substantive due process claim and the APA claim, neither of which turn on matters that would be the subject of meaningful discussion in the Plaintiff's deposition.

In any event, upon a *de novo* review of the Plaintiff's Objections, the Court would reach the same conclusion as the Magistrate Judge on the remaining issues, for essentially the same reasons.  Accordingly, the Plaintiff's Objections are overruled.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Designate Administrative Record (**#75**) and the Plaintiff's motion to Designate Administrative Record (**# 76**), are **GRANTED**, insofar as the parties shall brief the APA issue in claim six on the schedule set forth herein, and in accordance with the parties' individual identifications of the contents of the Administrative record.  The Defendants' Motion for Summary Judgment (**# 104**) is **GRANTED**, insofar as the Defendants are entitled to summary judgment on the Plaintiff's claims one through three, leaving for adjudication the Plaintiff's claim four and claim five (asserting a single claim for denial of

substantive due process relating to the Control Unit hearing), and claim six (the APA claim relating to the Program Statement).   The Plaintiff's Objections (**# 121**) are **OVERRULED** as moot, and to the extent not mooted, the Court **ADOPTS** the June 17, 2009 Recommendation (**#119**).  The Plaintiff's Motion for Temporary Restraining Order (**# 102**) is **DENIED**.  The Plaintiff's Motion to Supplement (**# 130**) his summary judgment response is **GRANTED**.

Dated this 16th day of September 2009

**BY THE COURT:**

Marcia S. Krieger
United States District Judge